## IN THE UNITED STATES DISTRICT COURT
## EASTERN DISTRICT OF ARKANSAS
## PINE BLUFF DIVISION

JAMES CHARLES FUDGE,                                                                       PLAINTIFF
ADC #78875

v.                                       5:14CV00120-KGB-JTK

M. OLSON, et al.                                                                         DEFENDANTS

## PROPOSED FINDINGS AND RECOMMENDATIONS

## INSTRUCTIONS

The following recommended disposition has been sent to United States District Judge Kristine G. Baker.  Any party may serve and file written objections to this recommendation.  Objections should be specific and should include the factual or legal basis for the objection.  If the objection is to a factual finding, specifically identify that finding and the evidence that supports your objection.  An original and one copy of your objections must be received in the office of the United States District Court Clerk no later than fourteen (14) days from the date of the findings and recommendations.  The copy will be furnished to the opposing party.  Failure to file timely objections may result in waiver of the right to appeal questions of fact.

If you are objecting to the recommendation and also desire to submit new, different, or additional evidence, and to have a hearing for this purpose before the District Judge, you must, at the same time that you file your written objections, include the following:

1.      Why the record made before the Magistrate Judge is inadequate.

2.      Why the evidence proffered at the hearing before the District Judge (if such a hearing is granted) was not offered at the hearing before the Magistrate Judge.

3.      The detail of any testimony desired to be introduced at the hearing before the District

Judge in the form of an offer of proof, and a copy, or the original, of any documentary or other non-testimonial evidence desired to be introduced at the hearing before the District Judge.

From this submission, the District Judge will determine the necessity for an additional evidentiary hearing, either before the Magistrate Judge or before the District Judge.

Mail your objections and "Statement of Necessity" to:

> Clerk, United States District Court
> Eastern District of Arkansas
> 600 West Capitol Avenue, Suite A149
> Little Rock, AR 72201-3325

## DISPOSITION

**I.     Introduction**

Plaintiff James Fudge is a state inmate incarcerated at the Varner Super Max Unit of the Arkansas Department of Correction (ADC). He filed this pro se civil rights action pursuant to 42 U.S.C. § 1983, alleging numerous unrelated allegations against twenty-one defendants, occurring over a period of three years. Following the submission of an Amended Complaint (Doc. No. 5), the Court directed the issuance of summons and service with respect to his medical claims regarding the care and treatment of his toenail conditions against Defendants Hubbard, Olson, Newton, Grey and Cantrell (Doc. No. 7). By Order dated February 18, 2015, the remaining claims and Defendants were dismissed without prejudice, and Defendant Olson was dismissed for failure to serve (Doc. No. 36). Plaintiff asks for monetary and injunctive relief.

This matter is before the Court on the Motion for Summary Judgment, Brief in support and Statement of Facts, filed by Defendants Hubbard, Newton, and Gray (Doc. Nos. 40-42), and the Supplemental Motion for Summary Judgment, Statement of Facts and Brief in support filed by Defendant Cantrell (Doc. Nos. 55-57). Plaintiff filed a Statement of Facts, Brief in support, and

Response (Doc. Nos. 47-48, 59-1).

## II. Amended Complaint

The claim at issue in this action concerns the alleged inadequate treatment of Plaintiff's fungal toenail disease, Onychomycosis (Doc. No. 5, p. 4). Specifically, Plaintiff alleges that his toenails grow long, thick, hard and sharp, and stab into his other toes, causing difficulty with mobility (Plaintiff weighs about 300 pounds). (Id., pp. 4, 6) His allegations against the Defendants are as follows:

1) In mid-June, 2011, Plaintiff notified Defendants Newton, Cantrell, and other nurses of his toenail problems, and they advised him to submit a sick call request. (Id., p. 5) Although Gray, Olsen, Newton and Cantrell could see his toenails, they did not clip or trim them, but rather, prescribed him pain medication and placed him on a list to see a doctor. (Id.) The unclipped toenails caused him pain and difficulty in wearing his shoes, and Plaintiff persuaded an inmate barber to bring him nail clippers so he could trim his nails in October, 2011. (Id.) Plaintiff was seen by a doctor in November, 2011, but he did not clip, trim, soak, or grind his toenails. (Id.) Instead, he issued Plaintiff a script to have scheduled toenail treatment every three months for a year. (Id.)

2) Plaintiff submitted several requests to have his toenails treated in 2012, but in March, 2012, Defendants Gray, Newton, Cantrell and Hubbard refused to provide him the treatment which was prescribed to him. (Id., p. 6) On July 18, 2012, Plaintiff wrote a grievance based on their refusal to provide him treatment and on July 27, 2012, his foot pain and condition contributed to a fall he suffered while walking down some stairs. (Id.) Defendant Cantrell soaked and clipped his toenails on July 27, 2012, and although he was taken to the infirmary for similar treatment on August 25, 2012, there was not enough growth to cut. (Id.)

3) On February 6, 2013, Defendant Gray told Plaintiff she did not have time to treat his medical needs unless he permitted security persons to escort him to the infirmary. (Id., p. 7) On February 14, 2013, Plaintiff submitted a sick call request for nail clipping, as directed by Defendant Hubbard. (Id.) Gray did not clip or trim his nails but issued him pain medication and placed him on a list to see the doctor on February 19, 2013. (Id.) On February 21, 2013, Hubbard refused to re-new Plaintiff's script for a foot soak and toenail clip, and on March 22, 2013, she treated his toes by sanding them and clipping them. (Id.) Despite an additional request for treatment to Defendant Gray on June 26, 2013, he did not receive treatment. (Id.)

4. Plaintiff asked non-parties for toenail treatment on February 5, 2014, and March 10, 2014. (Id., p. 8) On April 10, 2014, Defendant Gray left clippers at Plaintiff's cell door, and he was able to soak and clip his toenails. (Id.) Another non-party nurse sanded his nails on April 28, 2014. (Id.)[1]

## III. Summary Judgment

Pursuant to FED.R.CIV.P. 56(a), summary judgment is appropriate if the record shows that there is no genuine issue of material fact and the moving party is entitled to judgment as a matter of law. See Dulany v. Carnahan, 132 F.3d 1234, 1237 (8th Cir. 1997). "The moving party bears the initial burden of identifying 'those portions of the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, which it believes demonstrate the absence of a genuine issue of material fact.'" Webb v. Lawrence County, 144 F.3d 1131, 1134 (8th Cir. 1998) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986) (other

---

[1] Plaintiff filed his Complaint on April 2, 2014 (Doc. No. 1), and his Amended Complaint on April 29, 2014 (Doc. No. 5).

citations omitted)). "Once the moving party has met this burden, the non-moving party cannot simply rest on mere denials or allegations in the pleadings; rather, the non-movant 'must set forth specific facts showing that there is a genuine issue for trial.'" Id. at 1135. Although the facts are viewed in a light most favorable to the non-moving party, "in order to defeat a motion for summary judgment, the non-movant cannot simply create a factual dispute; rather, there must be a genuine dispute over those facts that could actually affect the outcome of the lawsuit." Id.

    **A.**    **Exhaustion**

Defendants first state that several of Plaintiff's claims against them should be dismissed, for failure to exhaust his administrative remedies, as required by the Prison Litigation Reform Act (PLRA) and the ADC grievance procedure. According to Shelly Byers, Medical Grievance Coordinator for the ADC, the ADC grievance procedure requires an inmate to complete and submit an informal resolution, followed by a step one grievance form within fifteen days after the incident occurred. (Doc. No. 42-3). The procedure requires the inmate to be specific as to the date, place, and personnel involved, and if the inmate complains about a medical issue, the grievance is forwarded to the medical department for a response. (Id.) If the inmate is not satisfied with the response, or fails to receive a response, he can appeal to the Deputy Director. (Id.) After reviewing Plaintiff's grievance records, Byers stated that he completed the grievance process for seven medical grievances which were filed between June 1, 2011, and the filing of his complaint on April 2, 2014 (Id., p. 2)

According to Defendants, the only grievance Plaintiff filed and exhausted in 2011 was VSM 11-4035, filed on October 12, 2011. In that grievance, he complained that he submitted a sick call to Defendant Newton on September 8, 2011, to have his toenails cut, and that medical staff

disregarded his requests for nail clippers and his verbal and written requests to cut his toenails. (Doc. No. 42-3, p. 47). Defendant Newton is the only Defendant named in this grievance.

In 2012, Plaintiff filed and exhausted two grievances, VSM 12-2824, and VSM 12-2937. In VSM 12-2824, Plaintiff complained that the medical staff was not treating his toenails or honoring his script for trimming. (Doc. No. 42-3, p. 51) In his appeal, he stated that Newton was chased down by an officer after being notified of his toe-nail script. (Id., p. 52) Again, Defendant Newton was the only Defendant named in this grievance. None of the Defendants were named in the second grievance, VSM 12-2937, where Plaintiff again complained that his toenail script was not honored. (Doc. No. 42-3, pp. 55-58)

Although Plaintiff exhausted four medical grievances in 2013, Defendants state that two of those (VSM 13-2276 and VSM 13-2622) do not relate to the toenail issue. (Doc. No. 42-3, pp. 63-69) In VSM 13-0580, Plaintiff complained that in February, 2013, Gray told him she did not have time to treat him if he was not escorted to the infirmary by two particular ADC officers. (Id., pp. 59-62) In VSM 13-3740, Plaintiff complained that Gray took his vital signs on June 25, 2013, but he was provided no treatment for his toenail condition. (Doc. No. 42-3, p. 70) In response to his grievance, the health services official noted that Gray referred Plaintiff to the provider on October 17, 2013 for toenail treatment. (Id., p. 71) In response to his appeal, the Chief Deputy Director noted that Hubbard saw Plaintiff on March 2, 2013, and told him a script for toenail clipping was not necessary because the big toenails needed to be sanded and the others could be clipped by Plaintiff. (Id., p. 72)

Based on these grievances, Defendants state that while the October, 2011, grievance mentioned Defendant Newton, neither the grievance nor the appeal referred to Newton accepting

a sick call request, and therefore, Plaintiff did not exhaust his 2011 claim as to her or Defendants Gray, Hubbard, and Cantrell. With respect to his 2012 claims against Defendants, Defendants state only Newton was named in the grievances, and therefore, Plaintiff did not exhaust as to Defendants Gray, Hubbard, and Cantrell. And, with respect to the 2013 claims, Defendants state that although he named Gray in VSM 13-580, he was not referring to his toenail problem, and therefore did not exhaust the allegation in his complaint. In addition, his complaint in VSM 13-3740 that she referred him to a doctor's call, does not refer to any improper actions by her. Defendants do acknowledge that the reference to Defendant Hubbard in the appeal to grievance 13-3740 technically exhausts the March, 2013 allegations against her.

In response, Plaintiff complains that he was not allowed to exhaust his administrative remedies on numerous occasions, and refers to several grievances he filed in which he complained about various ADC officials failing to process his grievances. He also claims that officials failed to process three grievances he filed in 2014, and that he exhausted other grievances Defendants failed to note: VSM 11-4149, VSM 11-4287, and VSM 13-860.

According to the PLRA,

> No action shall be brought with respect to prison conditions under section 1983 of this title, or any other Federal law, by a prisoner confined in any jail, prison, or other correctional facility until such administrative remedies as are available are exhausted.

42 U.S.C. § 1997e(a), unconst'l on other grounds, Siggers-El v. Barlow, 433 F.Supp.2d 811, 813 (E.D. Mich. 2006). The courts have interpreted this provision as a mandatory requirement that administrative remedies be exhausted prior to the filing of a lawsuit. In Booth v. Churner, the United States Supreme Court held that in enacting the PLRA, "Congress has mandated exhaustion clearly enough, regardless of the relief offered through administrative procedures." 532 U.S. 731, 741

(2001).  In addition, the United States Court of Appeals for the Eighth Circuit held in <u>Chelette v. Harris</u>, "[t]he statute's requirements are clear: If administrative remedies are available, the prisoner must exhaust them.  Chelette failed to do so, and so his complaint must be dismissed, for 'we are not free to engraft upon the statute an exception that Congress did not place there.'" 229 F.3d 684, 688 (8th Cir. 2000) (quoting <u>Castano v. Nebraska Dep't of Corrections</u>, 201 F.3d 1023, 1025 (8th Cir. 2000)).  In <u>Johnson v. Jones</u>, the Court held that "[u]nder the plain language of section 1997e(a), an inmate must exhaust administrative remedies *before* filing suit in federal court....If exhaustion was not completed at the time of filing, dismissal is mandatory."  340 F.3d 624, 627 (8th Cir. 2003) (emphasis in original).   Finally, in <u>Jones v. Bock</u>, the United States Supreme Court held that while the PLRA itself does not require that all defendants be specifically named in an administrative grievance, "it is the prison's requirements, and not the PLRA, that define the boundaries of proper exhaustion."  549 U.S. 199, 218 (2007).

In <u>Burns v. Eaton</u>, the Eighth Circuit recently ruled that an exhausted grievance which named one officer involved in a pepper spray incident did not cover the plaintiff's allegations against a second officer named in his complaint, when the grievance did not name the second officer and did not include a description of his allegedly-unlawful actions. The Court stated, "this was not a case where 'prison officials decline[d] to enforce their own procedural requirements and opt[ed] to consider otherwise-defaulted claims on the merits.'" 752 F.2d 1136, 1141 (quoting <u>Reed-Bey v. Pramstaller</u>, 603 F.3d 322, 325 (6th Cir. 2010)).

Having reviewed Plaintiff's complaint allegations and grievances, the Court finds that he exhausted his remedies concerning his 2011 allegations against Defendant Newton only, in VSM 11-4035, where he complained about submitting a sick call to Newton and that his toenail was overgrown and cutting into the toes on his feet.  (Doc. No. 42-3, p. 47).  The Court finds that he also exhausted

8

his 2012 allegations against Defendant Newton only, in VSM 12-2824, where he referred to placing her on notice of his medical script and complained that the medical staff was not treating him for his toenail condition. (Doc. No. 42-3, p. 51) The Court finds that VSM 13-0580 adequately referred to Defendant Gray, and that VSM 13-3740 sufficiently mentions Defendant Hubbard (Doc. No. 42-3, pp. 59-62, 70-72). The Court also notes that while Plaintiff does include a paragraph in his Amended Complaint which mentions that Defendant Cantrell cut his toenails on July 27, 2012 (Doc. No. 5, p. 6), and did exhaust a grievance mentioning this fact (VSM 12-3071)(Doc. No. 48, pp. 85-88), the Court does not construe this as a constitutional claim against Cantrell.

Therefore, the following allegations should be dismissed for failure to exhaust: the 2011 allegations against Defendants Hubbard, Gray, and Cantrell; the 2012 allegations against Defendants Hubbard, Gray, and Cantrell; and any 2013 allegations against Defendant Newton.

Although Plaintiff claims Defendants prevented him from exhausting, he refers to three grievances he allegedly filed in 2014, a time period that is not at issue in his complaint against the named Defendants. In addition, the grievances he claims he exhausted, VSM 11-4149 and VSM 4287, do not name the Defendants, and VSM 13-860 was not completely exhausted because the appeal was rejected. (Doc. No. 48, pp. 67-73, 92-96) Plaintiff is not specific about any other grievances he filed against the named Defendants, such as when he filed them, the subject matter or the specific facts about which he complained of in the grievances, or to whom he gave them. These vague assertions of exhaustion are not sufficient to overcome the evidence presented by the Defendants. See Gibson v. Weber, 431 F.3d 339, 341 (8th Cir. 2005), where the Court dismissed a complaint for failure to exhaust, despite assertions that the plaintiffs were prevented from filing grievances, stating, "[a]ppellants have presented no evidence that any prison official thwarted an attempt to initiate the procedures or that any official made it impossible for them to file grievances."

See also Banks v. Federal Bureau of Prisons, No. 2:12cv00150-SWW-JTK, 2013 WL 1200301 (E.D.Ark. 2013), and Hahn v. Armstrong, No. 1:08cv00169-LMB, 2010 WL 575748 (E.D.Mo. 2010).

### B. Deliberate Indifference

Defendants state that Plaintiff's remaining allegations against them do not support a finding of deliberate indifference to his serious medical needs. They first note that Defendant Hubbard is an advanced practice nurse (APN) and Defendants Gray and Newton are licensed practical nurses (LPN). According to the declaration of Dr. Robert Floss, associate regional medical director for Correct Care Solutions (the medical care provider for ADC inmates), it is not part of an APN's or LPN's job duties to cut or grind the toenails of an inmate, and if specialized medical attention is required, it would be handled by a registered nurse or higher-level provider (Doc. No. 42-2, p. 1)

In addition, Defendants state that Plaintiff's medical records show that Plaintiff voiced little to no complaints during segregation rounds, and that he received a one-time script for a foot soak and toenail trimming on May 6, 2010. (Id., p. 2; Doc. No. 42-1, p. 2) Plaintiff was treated by non-party nurses on October 3, 2011, and November 17, 2011, at which time the nurse wrote out a medical authorization permitting Plaintiff to report to the infirmary for a foot soak and toenail trimming every three months. (Doc. No. 42-1, p. 71) According to Floss, this meant that Plaintiff could submit a sick call request every three months, state the contents of his script, and request to be called in for PM treatment call. (Doc. No. 42-2, p. 2) Floss also stated that toenail clipping is not a serious medical need, especially since Plaintiff is not diabetic, and it is not considered an emergent situation permitting treatment without first submitting a sick call request. (Id., p. 3) Finally, Floss stated that after reviewing Plaintiff's medical records he found that Defendants' treatment of Plaintiff was appropriate and satisfactory for his toenail complaints. (Id., pp. 6-7)

In Response, Plaintiff states that while Defendants could look through the window of his cell and see that his toenails needed treatment, they instead advised him to submit a sick call request. He disagrees that he should have been proactive and sought out the treatment through sick calls, and states that Defendants were required to call him in for treatment every three months. He also claims that he is charged a medical fee every time he submits a sick call. In 2011, when he showed his medical script for a foot soak and toenail trim to Defendant Newton, she told him to submit a sick call, and later when he asked Newton and Gray for help during their rounds in his housing unit, they merely signed him to the doctor's list and gave him three days' worth of pain pills. Finally, he states that his toenail condition causes him excruciating pain from overgrowth and results in mobility problems.

In order to support a claim for an Eighth Amendment violation, Plaintiff must prove that Defendants were deliberately indifferent to a serious medical need. Farmer v. Brennan, 511 U.S. 825, 834 (1994). However, even negligence in diagnosing or treating a medical condition does not constitute a claim of deliberate indifference. Estelle v. Gamble, 429 U.S. 97, 105-06 (1976). Rather, the "prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not rise to the level of a constitutional violation," Estate of Rosenberg v. Crandell, 56 F.3d 35, 37 (8th Cir. 1995). See also Smith v. Marcantonio, 910 F.2d 500, 502 (8th Cir. 1990) (holding that a mere disagreement with a course of medical treatment is insufficient to state a claim for relief under the Eighth Amendment). Furthermore, prison physicians are entitled to exercise their medical judgment, and "do not violate the Eighth Amendment when, in the exercise of their professional judgment, they refuse to implement a prisoner's requested course of treatment." Long v. Nix, 86 F.3d 761, 765 (8th Cir. 1996). In addition, an inmate who complains that a delay in medical treatment constitutes a constitutional violation must provide

"verifying medical evidence" in the record to establish the detrimental effect of the delay, in order to succeed on his claim. Beyerbach v. Sears, 49 F.3d 1324, 1326 (8th Cir. 1995) (overruled in part on other grounds). Finally, "[i]n the face of medical records indicating that treatment was provided and physician affidavits indicating that the care provided was adequate, an inmate cannot create a question of fact by merely stating that [he] did not feel [he] received adequate treatment." Dulany, 132 F.3d at 1240.

Having reviewed the Plaintiff's medical records, the Court finds no evidence of deliberate indifference by any of the Defendants. Plaintiff complains that Defendant Newton failed to treat him in 2011 and 2012. There is no notation in the medical records of treatment by Newton in 2011 and 2012, and the only time Newton saw Plaintiff in sick call was on January 17, 2013, with respect to knee and neck pain. (Doc. No. 42-1, p. 98) Plaintiff's allegation in his Amended Complaint that she did not treat him and told him to submit a sick call request does not support a constitutional claim for relief. Dr. Floss stated in his declaration that toenail treatments are not within the job duties of a LPN nurse, and that it would have been medically appropriate for her to instruct Plaintiff to submit a sick call request for treatment. (Doc. No. 42-2, p. 5)

Plaintiff's complaint that Defendant Gray failed to treat him in 2013 also is not supported by the medical evidence. The medical records show that Plaintiff was scheduled to see Gray on February 6, 2013, but refused treatment. (Doc. No. 42-1, p. 102) Gray saw Plaintiff on February 19, 2013, June 26, 2013, and October 17, 2013, at which times she referred him to the doctor for toenail treatment.(Id., pp. 109, 126, 147) Again, according to Floss, such actions were medically appropriate. (Doc. No. 42-2, p. 5)

Finally, the medical records show that Defendant Hubbard saw Plaintiff on February 14, 2013, but no mention is made concerning toenail complaints. (Doc. No. 42-1, p. 106) Hubbard

again saw Plaintiff on February 21, 2013, at which time she directed that he be brought to the infirmary on Saturday for toenail treatment. (Id., p. 110) The records also reflect that Plaintiff's nails were clipped on February 28, 2013. (Id., p. 112) Hubbard saw Plaintiff on March 2, 2013 for a follow-up, where she told him that a foot soak and nail trim script was not necessary, because his large toes required sanding and that he could adequately clip the other toenails himself. (Id., p. 112) According to Dr. Floss, Hubbard appropriately assessed Plaintiff's condition and thinned his big toenails for easier future trimming and care. (Doc. No. 42-2, p. 6)

Based on all the evidence, the Court finds no dispute of material fact and that Defendants are entitled to judgment as a matter of law. While Plaintiff expected medical personnel to automatically escort him to the infirmary for toenail treatment every three months during his one-year script, he provides no evidence to support a finding that Defendant Newton acted with deliberate indifference to his serious medical needs by telling him he needed to submit a sick call request. In addition, he provides no evidence of deliberate indifference by Defendants Gray and Hubbard with respect to their treatment of his condition. Plaintiff's disagreement over the type of medical care he received does not support a finding of deliberate indifference. Smith v. Marcantonio, 910 F.2d at 502.

**IV.   Conclusion**

IT IS, THEREFORE, RECOMMENDED that:

1. The Motion for Summary Judgment filed by Defendants Grey, Hubbard, and Newton (Doc. No. 40) be GRANTED.

2. The Supplemental Motion for Summary Judgment filed by Defendant Cantrell (Doc. No. 55) be GRANTED.

3. Plaintiff's 2011 and 2012 claims against Defendants Gray, Hubbard, and Cantrell be DISMISSED without prejudice, for failure to exhaust.

4. Plaintiff's 2011 and 2012 claims against Defendant Newton be DISMISSED with prejudice.

5. Plaintiff's 2013 claims against Defendants Gray and Hubbard be DISMISSED with prejudice.

IT IS SO RECOMMENDED this 21st day of July, 2015.

_____
JEROME T. KEARNEY
UNITED STATES MAGISTRATE JUDGE